HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KANIUM VENTURA,

    Petitioner,

    v.

SNOQUALMIE INDIAN TRIBE, et al.,

    Respondents.

CASE NO. C11-45RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on two petitions for writs of habeas corpus. The first petition is the above-captioned case. The second is *Arlene Ventura v. Shelley Burch*, et al., Case No. C11-59RAJ. For the reasons stated below, the court concludes that it lacks subject matter jurisdiction over both petitions, DISMISSES the petitions, and directs the clerk to enter judgment.

## II. BACKGROUND

Petitioner Arlene Ventura is a member of the Snoqualmie Indian Tribe, (the "Tribe") as is her son, Petitioner Kanium Ventura. Both are elected members of the Snoqualmie Tribal Council. Both are also board members of the Snoqualmie Entertainment Authority, the agency with oversight over the Snoqualmie Casino.

The Tribal Prosecutor, Cynthia Tomkins, charged Mr. and Ms. Ventura in Tribal Court with crimes arising from the preparation in late 2008 of a Tribal Council resolution authorizing the hiring of the Moss Adams accounting firm to audit the Casino. The

ORDER – 1

criminal charges arise from allegations that the Venturas falsely represented that the Tribal Council had authorized the resolution, and used false statements to induce the Council chair to sign it. The Tribal Council rescinded the resolution in January 2009.

The Tribal Prosecutor initially charged Mr. Ventura in September 2010. In November 2010, the prosecutor amended the charges against Mr. Ventura and charged Ms. Ventura as well. Ms. Ventura faces five charges; Mr. Ventura faces four. The most serious of the charges carries a maximum sentence of six months of imprisonment. Neither Mr. Ventura or Ms. Ventura has been held in a jail or other detention facility while they await trial.

It is uncertain when or if the Tribal Court will try them. The judge assigned to hear their cases, Judge Raquel Montoya-Lewis, has withdrawn. In a December 31, 2010 order, Judge Montoya-Lewis explained that the Tribal Council had interfered in the Tribal Court's administration of civil claims for declaratory judgment that the Venturas had filed.[1] In light of that interference, she found that she could not preside over the criminal trials without it appearing that the Tribal Council's interference had influenced the Tribal Court. A few days after Petitioners filed their petitions, the Tribe appointed a judge pro tem to resolve the criminal charges. That judge will be unavailable to address Petitioners' criminal charges until he concludes a trial pending in another jurisdiction.

On November 13, 2010, the General Membership of the Tribe convened and voted to suspend the Venturas from the Tribal Council.[2] The resolution memorializing the

---

[1] The details of the Tribal Council's interference with the Tribal Court are beyond the scope of this order. It suffices to note that the Tribal Council removed the Clerk of Court, and issued an order removing Judge Montoya-Lewis from hearing any civil case against the Tribe.

[2] All members of the Tribe are also members of the General Council. Snoqualmie Const., Art. III, Sec. 1. The court assumes that the "General Membership" is synonymous with "General Council." The General Council can recall any Tribal Council member if a third of the General Council's eligible voters petition for recall, a special meeting ensues, and a majority of the General Council votes for recall. *Id.*, Art. VII, Sect. 3. Nothing in the Constitution permits the temporary suspension of a Tribal Council member's powers. For at least that reason, Petitioners assert that the General Membership resolution suspending them from office is invalid. This court does not reach these contentions in light of its disposition today.

ORDER – 2

General Membership's vote also prohibited the Venturas from entering the Tribal Center (where the Tribal Council's offices are located) and barred them from participating in Tribal Council meetings unless they were exonerated of the criminal charges.

Ms. Ventura received a trespass admonishment from the City of Snoqualmie Police Department when she attempted to enter her office at the Tribal Center on November 15, 2010. Mr. Ventura received a similar admonishment from City police.

Before Judge Montoya-Lewis withdrew from the criminal proceedings, the Tribal Court issued an order permitting both Venturas to access their tribal offices in late December 2010 to retrieve evidence needed for their defense against the criminal charges. The Tribe refused to honor the order, and the Venturas still have not returned to their tribal offices.

Mr. Ventura filed a petition for a writ of habeas corpus in this court on January 10, 2011; Ms. Ventura filed her habeas petition the next day. On January 12, Mr. Ventura amended his habeas petition, naming the Tribe, Shelley Burch (the President of the Tribal Council and the General Membership), Nina Repin (the Secretary of the Tribal Council and the General Membership), and the Tribal Prosecutor as Respondents. Ms. Ventura named the same Respondents, except that she did not name the Tribe.

So far as the record reveals, no Respondent has been served with either petition. In any event, no Respondent has entered an appearance.

### III.  ANALYSIS

The Snoqualmie Tribe, like all Indian tribes, is a "'distinct, independent political communit[y] . . . retaining [its] original natural rights' in matters of local self-government." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (quoting *Worcester v. Georgia*, 6 Pet. 515, 559 (1832)). Although the Tribe lacks complete sovereignty, it nonetheless enjoys sovereign immunity, subject only to express abrogation

ORDER – 3

of that immunity by the Tribe or Congress.[3] *Santa Clara Pueblo*, 436 U.S. at 58. The Tribe is generally free to regulate its internal affairs. *Id.* at 55. The United States Constitution does not constrain any Indian tribe except as it expressly provides. *Id.* at 56. In particular, the Bill of Rights and the Fourteenth Amendment are inapplicable to Indian tribes. *Id.*

Exercising its power to "limit, modify or eliminate the powers of local self-government which the tribes otherwise possess," Congress passed the Indian Civil Rights Act of 1968 ("ICRA," 25 U.S.C. §§ 1301-1303) to impose on tribes restrictions that are "similar, but not identical," to those found in the Bill of Rights and Fourteenth Amendment. *Santa Clara Pueblo*, 436 U.S. at 56-57. Among other things, ICRA prohibits unreasonable searches and seizures (25 U.S.C. § 1302(2)), assures the criminally accused a "speedy and public trial" (25 U.S.C. § 1302(6)), prohibits "excessive bail" or imprisonment for longer than one year (25 U.S.C. § 1302(7)), and guarantees due process (25 U.S.C. § 1302(8)). The Venturas invoke ICRA, contending that the Tribe has denied them due process, among other violations.

ICRA does not, however, generally provide a cause of action in the courts of the United States. ICRA is not a general waiver of a tribe's sovereign immunity. *Santa Clara Pueblo*, 436 U.S. at 59. ICRA does not expressly or "impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers." *Id.* at 72.

A member of a tribe deprived of a right that ICRA guarantees has a single remedy in the courts of the United States: a writ of habeas corpus. 25 U.S.C. § 1303 ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."). But, as the text of the statute suggests, a habeas writ is available only to a person in tribal "detention." *Jeffredo v. Macarro*, 590 F.3d 751, 756 (9th Cir. 2009). "Detention," in

---

[3] The Tribe's Constitution provides that the Tribe "is immune from suit except to the extent that the Tribal Council expressly and unambiguously waives its sovereign immunity." Snoqualmie Const., Art. I, Sect. 3.

ORDER – 4

turn, has a similar meaning to the "custody" requirement that applies in other habeas proceedings. *Id.* In addition to the custody requirement, a § 1303 habeas petitioner must demonstrate that she has exhausted tribal remedies, and that the custody from which she seeks release arises from criminal rather than civil proceedings. *Id.* at 756-57.

A tribe member is in "custody" for habeas purposes when the tribe has imposed a "severe actual or potential restraint on [his or her] liberty." *Jeffredo*, 590 F.3d at 757 (quoting *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 880 (2d Cir. 1996)). A tribe member who is jailed or imprisoned is in custody. *Jeffredo*, 590 F.3d at 757. An imminent threat of imprisonment can also satisfy the custody requirement. *Id.* at 758 (citing *Hensley v. Mun. Court*, 411 U.S. 345 (1973)).[4]

Actual or imminent imprisonment, however, is not the only restraint for which a habeas writ is available. *Jones v. Cunningham*, 371 U.S. 236, 240 (1963) ("History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus."). For example, a tribe member who has been permanently banished from a tribe and its lands has suffered a restraint on liberty that is the equivalent of custody. *Jeffredo*, 590 F.3d at 757. But the mere threat of banishment or exclusion is not a form of custody. *Id.* at 757-58. The loss of a limited set of tribal benefits is also not a form of custody. *Id.* at 757 (discussing loss of health insurance, tribal distribution payments, and exclusion from membership roll).

In this case, neither Petitioner is in custody. It is undisputed that they have not been detained pending trial. They have been stripped of their power as Tribal Council

---

[4] In *Hensley*, the petitioner had been sentenced to a year's imprisonment, and remained free only because the trial court stayed execution of his sentence pending the exhaustion of his post-conviction remedies. 411 U.S. at 346. State authorities had "emphatically indicated [their] determination to put him behind bars . . . ." *Id.* at 351. The Court noted that the threat of custody was not "a speculative possibility that depends on a number of contingencies over which he ha[d] no control." *Id.* at 352.

ORDER – 5

1  members, and have been denied access to the offices of tribal government, but these
2  limited restrictions are no more severe than those deemed insufficient in *Jeffredo*. 590
3  F.3d at 757 ("We . . . hold that the limitation of [petitioner's] access to certain tribal
4  facilities does not amount to a 'detention.'").

5  Petitioners' pending criminal charges are not a basis to invoke § 1303, because
6  they have not exhausted their tribal remedies. They face criminal charges for which, if
7  convicted, they could be imprisoned. Except in extraordinary circumstances, the remedy
8  for the threat of imprisonment arising from criminal charges is trial, not habeas relief.
9  For example, habeas petitioners seeking relief from state custody must exhaust state
10 remedies, including trial, appeal, and state post-conviction relief. *E.g.*, *Drury v. Cox*, 457
11 F.2d 764, 764-65 (9th Cir. 1972) ("[O]nly in the most unusual circumstances is a
12 defendant entitled to have federal interposition by way of injunction or habeas corpus
13 until after the jury comes in, judgment has been appealed from and the case concluded in
14 the state courts."). Similarly, tribe members invoking ICRA must exhaust their tribal
15 remedies before seeking habeas relief. *Jeffredo*, 590 F.3d at 756. The exhaustion
16 requirement gives way only where the "tribal courts offer no adequate remedy." *Id.*

17 Although Petitioners may lack an adequate tribal remedy for the stalemate in the
18 Tribal Court, that stalemate does not place them in custody. Petitioners note that the
19 withdrawal of the Tribal Court leaves them in legal limbo, and renders them incapable of
20 exhausting their tribal remedies, at least for the time being. This court, however, does not
21 have authority to issue a writ releasing Petitioners from limbo, it can only release them
22 from custody. Although the Tribal Court appears to have come to a standstill, Petitioners
23 are not in custody pending the resolution of that standstill.

24 In addition to the custody and exhaustion requirements, the *Jeffredo* panel
25 imposed a third limitation on habeas relief: the custody must arise from criminal
26 proceedings. 590 F.3d at 759. The restrictions on Petitioners' liberty arise from the
27 General Membership resolution that suspended them from the Tribal Council and barred
28 ORDER – 6

them from the Council's offices.  These are not explicitly criminal proceedings, and are more akin to legislative acts.  It is possible that in the proper case, the act of a tribal legislative body could be characterized as a criminal proceeding.  For example, if a tribal legislature imprisoned a tribe member by majority vote, that member could perhaps seek habeas relief.  The court need not test the limits of the "criminal proceeding" requirement for § 1303 relief in this case.  The restrictions that the General Membership imposed are not criminal in nature, nor was the procedure by which those restrictions were imposed.  Although separate tribal criminal proceedings are pending against Petitioners, they have so far imposed no restraints on their liberty.[5]

For all of these reasons, the court holds that it lacks subject matter jurisdiction over these habeas petitions.  The court takes no position on the whether the Tribe has violated ICRA or the Tribe's Constitution in the pursuit of criminal and other sanctions against Petitioners.  It merely holds that the court has no jurisdiction to interfere in that pursuit.

Before concluding, the court notes that it has reached its decision today without a hearing and before the Tribe or its officers have appeared in this action.  The court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  Ordinarily, the court would have issued an order to show cause or otherwise given Petitioners an opportunity to make the case for the exercise of jurisdiction.  In this case, Petitioners recognized that subject matter jurisdiction was in question, and used their habeas petition (in Mr. Ventura's case) and an accompanying memorandum (in Ms. Ventura's case) to address the question of subject matter jurisdiction.  Both Petitioners have weighed in on the jurisdictional question.  There is no need to offer them a second

---

[5] To the extent that the trespass admonishments from the Snoqualmie Police are criminal in nature, they are plainly beyond the scope of the instant petitions.  The Snoqualmie Police Department is not a tribal agency.

ORDER – 7

opportunity to address the question, particularly where the mere pendency of this action presents the specter of federal interference in the sovereign affairs of the Tribe.

## IV.  CONCLUSION

For the reasons stated above, the court lacks subject matter jurisdiction over either of the two pending habeas corpus petitions.  The court accordingly DISMISSES both petitions, and directs the clerk to enter judgment in accordance with this order.  The clerk shall issue an order memorializing this decision on the docket of Case No. C11-59RAJ.

DATED this 24th day of January, 2011.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 8